No. 95-3098

Kathleen Kirkeby, David Habiger,      *
Ronald Shaw, Martin Wishnatsky,       *
Timothy Lindgren, and                 *
Darold Larson,                        *
                                      *
        Appellees,                    *
                                      *   Appeal from the United States
        v.        *                   District Court for the
                                      *   District of North Dakota.
Bruce Furness, in His                 *
Official Capacity as Mayor            *
of the City of Fargo;                 *
Garylle B. Stewart, in His            *
Official Capacity as City             *
Attorney of the City of Fargo;        *
Fargo City Commission; and            *
City of Fargo,                        *
                                      *
        Appellants.                   *


Submitted:  June 10, 1996

Filed:  August 8, 1996


Before MAGILL, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit Judges.


MORRIS SHEPPARD ARNOLD, Circuit Judge.

        This case is before us for a second time.  The plaintiffs are
pro-life activists who sometimes express their objection to abortion by
picketing near the residences of individuals who provide abortion services.
In 1994, they challenged the constitutionality of a residential picketing
ordinance passed by the city of Fargo, North Dakota.  After the district
court refused to issue a preliminary injunction enjoining enforcement of
the

ordinance, we took up the case on appeal and reversed, holding that a preliminary injunction was in order because the ordinance was probably unconstitutional. Kirkeby v. Furness, 52 F.3d 772, 774-76 (8th Cir. 1995) ("Kirkeby I").

On remand, the district court held that the ordinance was unconstitutional because it violated the plaintiffs' First Amendment right of free expression. The court also held that two "Restricted Picketing Zones" established pursuant to the ordinance were unconstitutional. The court therefore granted summary judgment for the plaintiffs and enjoined enforcement of the ordinance.

This case presents two distinct issues. The first is whether the ordinance violates the First Amendment on its face. The second is whether the "Restricted Picketing Zone" that the city adopted after amending the ordinance violates the plaintiffs' First Amendment rights. We answer both questions in the affirmative and affirm the judgment of the district court.[1]

I.

As a preliminary matter, we note that the ordinance at issue here differs slightly from the one that we considered in Kirkeby I. (Fargo amended its ordinance before our decision in that case.) Because the plaintiffs amended their complaint below to include allegations against the amendments, however, the new ordinance is properly before us on this appeal.

The ordinance, as amended, prohibits "targeted residential picketing." Fargo Municipal Code, art. 10-0802. Targeted residential picketing is defined as picketing that identifies an

---

[1]The Honorable Rodney S. Webb, Chief United States District Judge for the District of North Dakota.

occupant (either orally or in writing) within two hundred feet of a dwelling, blocking access to a dwelling, or maintaining a presence within seventy-five feet of a dwelling for longer than five minutes at a time. Fargo Municipal Code, art. 10-0801(4). The ordinance also gives the Board of City Commissioners the authority to declare, at the request of a complaining resident, the resident's block a "Restricted Picketing Zone" in which picketing may be limited or prohibited outright. Fargo Municipal Code, art. 10-0804.

## A.

Plaintiffs first object to the definition of picketing in the ordinance. In evaluating this claim, we must determine whether the definition is content-based or content-neutral, because "the appropriate level of scrutiny is initially tied to whether the statute distinguishes between prohibited and permitted speech on the basis of content." Frisby v. Schultz, 487 U.S. 474, 481 (1988). Content-based restrictions are unconstitutional unless they are narrowly tailored to serve a compelling government interest. Perry Education Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). Content-neutral regulations, on the other hand, withstand scrutiny if they are "'narrowly tailored to serve a significant governmental interest'" and if they "'leave open ample alternative channels for communication.'" Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989), quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984).

The ordinance defines picketing as "standing, marching, sitting, lying, patrolling or otherwise maintaining a physical presence inside of, in front, or about any premises for the purpose of persuading the public or an occupant of such premises or to protest some action, attitude or belief." Fargo Municipal Code, art. 10-0801(2). We agree with the plaintiffs that this definition is content-based. The picketing limitations that incorporate this

limitation are not "justified without reference to the content of the regulated speech." <u>Clark</u>, 468 U.S. at 293. It is impossible to tell whether a stander, marcher, patroller, etc., is "picketing" without analyzing whether he or she intends to convey a "persuasive" message or to "protest some action, attitude or belief." (We note that Fargo itself has conceded as much: when asked in plaintiffs' request for admissions whether distributing literature, soliciting donations, or otherwise disseminating information would be considered picketing, Fargo replied that it might be, "depending on the content of the communication.")

As we have already noted, because the definition of picketing is content-based, any restriction on expression that incorporates it must be justified by a compelling government interest. <u>Perry</u>, 460 U.S. at 45. Although the interest asserted by Fargo (protecting residential privacy and tranquility) is a "substantial" one, <u>Frisby</u>, 487 U.S. at 488, the Supreme Court has never held that it is a compelling interest, <u>see</u> <u>Carey v. Brown</u>, 447 U.S. 455, 465 (1980), and we do not think that it is. Because the entire ordinance is bottomed on this definition, it is unconstitutional.

We hold, moreover, that even if the definition of picketing were not content-based, the restrictions incorporating it would be unconstitutional. First, as we mentioned above, content-neutral restrictions must be narrowly tailored. <u>Frisby</u>, 487 U.S. at 482. A regulation is narrowly tailored if it "targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." <u>Id.</u> at 485. In this case, by defining picketing as persuasive or protest activity "inside of, in front, or about any premises," the ordinance arguably reaches a teenager pleading with her father to extend her curfew, a child protesting when ordered to eat all of his vegetables, or a husband trying to convince his wife that he really needs a new set of golf clubs. While limiting such

activities might well improve domestic tranquility, Fargo is certainly without power to do so.

The definition of picketing is also unconstitutionally vague. "To survive a vagueness challenge, a statute must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and 'provide explicit standards for those who apply [the statute].'" Video Software Dealers Ass'n v. Webster, 968 F.2d 684, 689 (8th Cir. 1992), quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). In this case, it is unclear to us, and we think to the ordinary person, precisely what activities are considered picketing. Fargo itself apparently shares our puzzlement. For example, Fargo claimed in response to requests of admissions that door-to-door religious proselytizing and commercial sales are not covered by the ordinance, but we think that these are activities that are clearly "persuasive" as the word is generally understood.

Finally, the ordinance fails to "'establish minimal guidelines to govern law enforcement.'" Kolender v. Lawson, 461 U.S. 352, 358 (1983), quoting Smith v. Goguen, 415 U.S. 566, 574 (1974). When asked in a request for admission how the police would determine whether individuals were picketing within the meaning of the ordinance, Fargo responded, "it obviously involves some judgment on the part of the law enforcement officer who is charged with the duty of enforcing the ordinance." Although we must necessarily give law enforcement officials some discretion to make judgments about whether someone is violating the law, they must be guided by a reasonably discernible sense of what activities are prohibited. Here, Fargo was unable to articulate standards to guide law enforcement officers, stating instead, in response to a request for admission, that "whether a particular activity constitutes picketing must be determined in the context of all the activities of the person doing the activity." This response illustrates that,

rather than providing a guide for law enforcement, the ordinance "permit[s] 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" Kolender, 461 U.S. at 358, quoting Smith, 415 U.S. at 575.

B.

The plaintiffs also contend that the total ban on "targeted residential picketing" is unconstitutional. We agree. This prohibition imposes a content-based restriction on expression by prohibiting "[c]arrying written material" or "[s]houting or otherwise verbalizing protests within 200 feet of a dwelling which identifies the occupant." Fargo Municipal Code, art. 10-0801(4)(A), art. 10-0801(4)(B). These restrictions regulate speech or conduct "based on hostility -- or favoritism -- towards the underlying message expressed," R.A.V. v. City of St. Paul, 505 U.S. 377, 386 (1992). Whether an individual's expressive activity is regulated depends entirely on whether the content of his or her expression identifies a resident. See Boos v. Barry, 485 U.S. 312, 318-19 (1988) (opinion of O'Connor, J.). Our conclusion is highlighted by the fact that the plaintiffs would be unable to convey their intended message without identifying the targeted resident. The statements "abortion is immoral" and "the woman who lives in this house is immoral because she performs abortions" are qualitatively distinct. Perhaps Fargo believes that the latter message, because of its content, is more discomforting, insulting, or embarrassing. But there is no constitutional right to be free from insult, and shielding residents from it is not a compelling governmental interest. See, e.g., Texas v. Johnson, 491 U.S. 397, 408-09, 414 (1989), and Cohen v. California, 403 U.S. 15, 21 (1971).

The residential picketing restrictions would be invalid even if they were not content-based, because they are not narrowly tailored. They restrict far more speech than necessary to

-6-

"eliminate[] ... the 'evil' [Fargo] seeks to remedy." Frisby, 487 U.S. at 485. For one thing, the ordinance restricts speech that is completely unrelated to that interest. Justice Stevens's observation in Frisby applies with even greater force here: In Fargo, it is apparently illegal for a fifth-grader to carry a sign in front of a residence that states "GET WELL CHARLIE -- OUR TEAM NEEDS YOU." Id. at 496 (Stevens, J., dissenting). The ordinance also prohibits standing on the sidewalk while holding a sign that states "Vote for Joe" or "Come wish Susan a happy birthday."

Additionally, although the Supreme Court has held that it is permissible to prohibit "focused picketing taking place solely in front of a particular residence," Frisby, 487 U.S. at 483, it has also held that a three-hundred-foot buffer zone is unconstitutional. Madsen v. Women's Health Center, 114 S. Ct. 2516, 2529-30 (1994). In this case, the ordinance prohibits picketers from identifying an occupant within two hundred feet of a dwelling. Fargo Municipal Code, art. 10-0801(4)(D), art. 10-0801(4)(B). We believe that the size of the area within which speech is curtailed is too large. We recently held that a city could restrict residential picketing within a three-house zone, Douglas v. Brownell, No. 95-2234, slip op. at 17-19 (8th Cir. 1996), but we are quite certain that any extension beyond that zone would be unconstitutional.

C.

The plaintiffs also object to the section of the ordinance that empowers the Board of City Commissioners to establish a "Restricted Picketing Zone" at the behest of a complaining resident. Fargo Municipal Code, art. 10-0804. The ordinance prohibits picketing in restricted picketing zones "except as permitted in the resolution establishing the zone." Id. The Board may ban picketing altogether for two hundred feet on either side of

the complaining resident's lot and may impose additional restrictions on picketing for the resident's entire block. Fargo Municipal Code, art. 10-0804(B).

We agree with the plaintiffs that this section of the ordinance is invalid. The "200-foot zone is almost certainly too restrictive of the right to speak freely in public." Kirkeby I, 52 F.3d at 774. (In fact, the 200-foot area might, depending on the size of the lot, cover an area larger than the one struck down in Madsen, 114 S. Ct. at 2530.) Madsen and Frisby make it clear that an ordinance (like the one before us) that allows Fargo to prohibit "[g]eneral marching through residential neighborhoods, or even walking a route in front of an entire block of houses," is unconstitutional. Madsen, 114 S. Ct. at 2530; Frisby, 487 U.S. at 483. Although Fargo may pass an ordinance prohibiting protesters from maintaining a constant presence outside of three residences, Douglas, supra, we think it manifest that it cannot give the Board the authority to create a "First-Amendment-free zone" that is larger than two football fields.

The fact that the Board must make legislative "findings," Fargo Municipal Code, art. 10-0804(A), about the nature and extent of previous picketing before establishing a zone does not change our analysis. Fargo's protestations to the contrary, the government may not legislate away the First Amendment. Furthermore, although Fargo assures us that the Board will establish a zone only if picketing interferes with residential privacy and tranquility, the statute includes no such requirement. The ordinance directs the Board to "investigate any request from a resident of [Fargo] that intrusive or repeated picketing is occurring," and states that "[u]pon review, the Board ... may adopt a resolution establishing a Restricted Picketing Zone." Id. The ordinance does not require the Board to base its decision about whether to establish a zone upon any particular findings, nor does

-8-

it require that the zone be narrowly tailored to address specifically identified difficulties.

Finally, the ordinance gives the Board the power to impose additional picketing restrictions on an entire residential block. Fargo Municipal Code, art. 10-0804(B). The ordinance does not specify what other restrictions are permissible, and we are concerned that permitting the Board to restrict speech on a block-wide basis will lead to many unconstitutional restrictions on free expression. (Indeed, as our discussion of the remaining restricted picketing zone, below, demonstrates, it already has.)

II.

We turn now to whether the restricted picketing zone, adopted by the city following amendment of the ordinance, is itself unconstitutional. (The Board had established two other restricted picketing zones under the old version of the ordinance, but it admits that they do not comport with the amended version. Although the zone we now consider expired in early July 1996, we believe that the dispute about its constitutionality is not moot. The restrictions imposed by the Board are "capable of repetition, yet evading review" because there is "a reasonable expectation that the [plaintiffs] will be subjected to the same action again." Murphy v. Hunt, 455 US 473, 482 (1982) (citations and quotation marks omitted). The resolution establishing the zone restricts picketing in several ways. First, it bans picketing altogether, on the resident's side of the street, in front of and for one hundred fifty feet on either side of her lot. For reasons that we have already made amply clear, this part of the resolution is unconstitutional. The "speech-free" zone is simply too large. Madsen, 114 S. Ct. at 2530.

The resolution also imposes several block-wide picketing limitations. It limits the duration of picketing to one hour per

-9-

day and restricts the hours within which picketing may occur. (Picketing is permitted Monday through Friday, between the hours of 9 a.m. and noon, 1 p.m. to 4 p.m., and 7 p.m. to 8 p.m.; it is prohibited all weekend.)  The resolution also provides that no more than five individuals may picket at any one time.  In evaluating the constitutionality of these restrictions, we turn again to the standard articulated in Ward, 491 U.S. at 791: Content-neutral time, place, and manner restrictions are valid if "they are narrowly tailored" and "leave open ample alternative channels for communication of the information."  Although the Supreme Court has indicated that residential picketing difficulties are often best addressed by "a limitation on the time, duration of picketing, and number of pickets," Madsen, 114 S. Ct. at 2530, we believe that, with the exception of the weekday time-of-day limitations, all of the limitations in the resolution are too restrictive of the plaintiffs' right to speak.

We turn first to the hour-per-day picketing limitation and the total ban on weekend picketing.  Although Fargo may set some time limits on picketing (for example, the weekday hour restrictions imposed here seem reasonable), we cannot accept Fargo's argument that imposing such extreme restrictions upon the right to speak is the most narrowly tailored way to protect residential privacy and tranquility.  We seriously doubt that residential privacy will be dramatically undermined by permitting picketing on the public streets for more than five hours per week.

Furthermore, the regulations do not leave open "ample alternative channels for communication of the information" that the plaintiffs wish to convey.  Ward, 491 U.S. 791 (emphasis supplied).  As we emphasized in our discussion of the portion of the ordinance that prohibits identifying the target of the picketer, plaintiffs wish to express an opinion about an individual to that individual and others, and they wish to direct their message at that

individual.  That is precisely why they picket around the individual's home: they wish to speak to her and they wish to identify her to others. Therefore, allowing them to picket in the town square or even on the next block does not satisfy the second Ward requirement.  These time limits do not give the plaintiffs enough opportunity to direct their intended message at their intended recipients.

Finally, we believe that it is also unconstitutional to limit the total number of pickets per residential block to five.  This restriction is similar to one that we invalidated in United Food & Commercial Workers Int'l Union v. IBP, Inc., 857 F.2d 422, 432 (8th Cir. 1988), that prohibited "more than two pickets at any one time within ... fifty feet of any entrance to the premises being picketed," id.  In this case, because they apply to an entire block, the restrictions impose even broader restrictions on free expression, and, as in United Food, we cannot say that these restrictions represent the most narrowly tailored way to protect Fargo's stated interest.  In fact, taken together, the duration and number restrictions may well lead to a situation where most residents are unaware that anyone is picketing at all.

### III.

In closing, we emphasize that "[t]he antipicketing ordinance operates at the core of the First Amendment," Frisby, 487 U.S. at 479, because it restricts free expression on the public streets, "the archetype of a traditional public forum," id. at 480.  "Because of the importance of 'uninhibited, robust, and wide-open' debate on public issues," id. at 479, quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964), the government must be extremely solicitous of the plaintiffs' desire  to express themselves and must carefully, narrowly, and meticulously craft any restriction on that desire.  In this case, the city of Fargo has been neither solicitous nor careful.

-11-

For the foregoing reasons, we affirm the judgment of the district court.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent.

The court today holds that the ordinance is content-based, and that the restriction is not justified by a compelling state interest. I believe the court should simply hold as much, and go no further. The court, however, decides that it must continue to analyze the remainder of the ordinance, concluding that even if the definition of picketing is content-neutral, the ordinance is unconstitutional. This reduces the remainder of the court's opinion to dictum, with no binding force. I will comment briefly on these issues.

This case has taken an extremely curious path. In denying the preliminary injunction, the district court made specific findings of fact concerning the targeted residential picketing provisions of the ordinance and expressly reserved ruling pending further exploration on the residential picketing zones. When the court heard the appeal on the preliminary injunction, it stated that "we entertain grave doubts" as to whether the ordinance "can pass constitutional muster." Kirkeby v. Furness, 52 F.3d 772, 774 (8th Cir. 1995). We concluded that the "200-foot zone is almost certainly too restrictive of the right to speak freely in public." Id. We thought that the "200-foot area may well be an impermissibly restrictive regulation of picketing . . . ." Id. at 775. Applying the considerations set forth in Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc), we concluded that "the protesters' right to speak has probably been violated, [and] they will likely suffer an irreparable injury," without the issuance of a preliminary

injunction. 52 F.3d at 775. We emphasized that we had not made a final decision on the merits, but "have considered the merits only to the extent that the Dataphase considerations have compelled us to do so." Id. I dissented from the court's opinion in Kirkeby I.

The district court accepted the signals taken from our tentative conclusions, and granted a permanent injunction. The district court did so without making specific findings of fact or conclusions of law. Thus, we are faced with the entry of a permanent injunction running contrary to the district court's original findings and based on this court's most tentative and general comments. The district court's original findings with respect to the picketing provisions have not been set aside or reversed. In light of this court's discussion in Kirkeby I, the district court simply abandoned its further exploration of the residential picketing zones provisions. Thus, a permanent injunction has simply been floated in the air, without a tether of supporting factual findings.

I entertain some question as to whether under the analysis in Carey v. Brown, 447 U.S. 455 (1980), and R.A.V. v. City of St. Paul, 505 U.S. 377 (1992), the ordinance is content-based. Although the ordinance defines picketing to include conduct for the purpose of persuading the public or protesting some action, the definition is a generic one and does not concern specific subjects or issues. Cf. Carey, 447 U.S. at 460 (statute distinguished labor picketing from other picketing); R.A.V., 505 U.S. at 391 (ordinance distinguished certain conduct directed at race, color, creed, religion or gender.)

Furthermore, I believe that the court's holding that the residential privacy interest at issue here is not compelling may be premature. The court cites Carey v. Brown, 447 U.S. 455, 465 (1980), for its position that residential privacy does not

constitute a compelling state interest. The appellant in Carey argued that the Court should uphold a content-based residential picketing statute because the statute furthered the State's compelling interest of ensuring privacy in the home. Id. at 465. The statute barred picketing of residences, but exempted "the peaceful picketing of a place of employment involved in a labor dispute." Id. at 457. The Court declined to decide whether the State's interest in residential privacy constituted a compelling interest because it concluded that the State's asserted interest of protecting residential privacy was not served by the statute. Id. at 464-65. The ordinance neither distinguished among various sorts of nonlabor picketing on the basis of the harms inflicted on residential privacy nor explained how peaceful labor picketing is less disruptive of residential privacy than peaceful picketing on issues of broader social concern. Id. at 465.

The Court has never stated that residential privacy does not constitute a compelling interest. Carey did not decide the question, and the Court has, many times, emphasized "the unique nature of the home, `the last citadel of the tired, the weary, and the sick.'" Frisby v. Schultz, 487 U.S. 474, 484 (1988) (quoting Gregory v. City of Chicago, 394 U.S. 111, 125 (1969) (Black, J., concurring)). "`The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society.'" Id. (quoting Carey, 447 U.S. at 471).

As the Supreme Court recognized in Frisby, there is a special part of the residential privacy interest accorded to "unwilling listeners . . . within their own homes." 487 U.S. at 485. After discussing the consequences of targeted residential picketing in Frisby, the Court stated: "[W]e have repeatedly held that individuals are not required to welcome unwanted speech into their own homes and that the government may protect this freedom." Id.

On several occasions, the Court has held that the government may protect the freedom of individuals to avoid unwanted speech in their own homes, upholding the rights of the "unwilling listener" over the First Amendment rights of others.  See, e.g., FCC v. Pacifica Found., 438 U.S. 726, 748-49 (1978) (offensive radio broadcasts); id. at 759-60 (Powell J., concurring in part and concurring in the judgment) (same); Rowan v. United States Post Office Dep't., 397 U.S. 728, 737 (1970) (offensive mailings); Kovacs v. Cooper, 336 U.S. 77, 86-87 (1949) (plurality opinion) (sound trucks).

In the privacy of the home, "[an] individual's right to be left alone plainly outweighs the First Amendment rights of an intruder."  Pacifica Found., 438 U.S. at 748 (citing Rowan, 397 U.S. at 737).  The Court further explained this interest in Kovacs:

> The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience. To enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself.

336 U.S. at 88.  Cf. Martin v. City of Struthers, 319 U.S. 141 (1943) (invalidating ban on door-to-door solicitation when the homeowner can protect himself from the intrusion by an appropriate sign that he does not want to be disturbed.)

In essence, the court today holds that the protesters' First Amendment rights trump the rights of individuals to avoid unwanted speech in their homes.  This directly conflicts with the teaching, particularly of Frisby, concerning the State's interest in protecting the well-being, tranquility, and privacy of the home.  In its analysis, the court today simply gives little or no weight to the privacy interests of the besieged homeowners, and allows them to be trampled by the speech of the protesters despite the

-15-

Supreme Court's instruction that targeted residential picketing is not accorded as much First Amendment protection as other forms of communication. The Court reached this conclusion because residential picketers "do not seek to disseminate a message to the general public, but to intrude upon the targeted resident . . . in an especially offensive way." Frisby, 487 U. S. at 486.

I also disagree with the court's unduly restrictive reading of Frisby and Madsen v. Women's Health Center, Inc., 114 S. Ct. 2516 (1994). Madsen struck down a portion of an injunction prohibiting picketing, demonstrating, or using sound amplification equipment within 300 feet of the residences of clinic staff. 114 S. Ct. at 2529-30. Madsen, however, also held constitutional a thirty-six foot buffer zone around the clinic's entrances and exits. Id. at 2527. Madsen thus recognizes that the protected zone may extend beyond the property lines of the building in question. Indeed, in striking down the 300-foot zone, the court foresaw that "a limitation on the time, duration of picketing, and number of pickets outside a smaller zone could have accomplished the desired result." Id. at 2530. Although Madsen concluded that the 300-foot zone was too large, it certainly did not define the boundaries of the restricted area. Madsen also differs from this case in three other important ways. First, Madsen involved an injunction, which is subject to a more rigorous degree of scrutiny. 114 S. Ct. at 2524-25. Second, Madsen involved different interests: ensuring access to a clinic and ensuring the health and well-being of patients at a clinic. Id. at 2527-28. This case involves the substantial interest of protecting the peace and tranquility of the home and the protection of the unwilling listener in his own home. See Frisby, 487 U.S. at 484-85. Third, the "zone" here is not nearly as large as that in Madsen, nor does it curtail as much speech. Madsen prohibited all picketing or demonstrating within 300 feet of the residences of clinic staff. 114 S. Ct. at 2529. The zone at issue here only prohibits the identification of an

occupant within 200 feet of a residence.  The 200 foot zone is smaller and does not prohibit all picketing or demonstrating--only picketing which identifies an occupant within two hundred feet of the occupant's home.[2]

I also disagree with the court's conclusion that the two-hundred foot area within which speech is curtailed is too large.[3]  Although the Court in Frisby construed the ordinance to prohibit only "focused picketing taking place solely in front of a particular residence," 487 U.S. at 483, I do not believe this language defined the parameters of targeted picketing.  I disagree with the court today that we may only restrict residential picketing within a three-house zone.  In recent days, this court approved an ordinance that restricts picketing in front of a targeted residence, as well as the residences immediately adjacent thereto.  Douglas v. Brownell, No. 95-2234, 1996 WL 379953 (8th Cir. July 9, 1996).  We concluded that the Court in Frisby focused on the impact the ban had on protected activity, not on the size of the prohibited zone.  Id. at *8.  We acknowledged the direct relationship between the size of the zone and the impact on speech, but concluded we were not required to strike down an ordinance simply because the zone extends beyond the area solely in front of

---

[2]Although the court today does not cite Vittitow v. City of Upper Arlington, 43 F.3d 1100 (6th Cir.), cert. denied, 115 S. Ct. 2276 (1995), it relied on Vittitow in denying the preliminary injunction, and much of the court's reasoning today appears to follow Vittitow.  I am more persuaded, however, by Judge Martin's dissent in that case.  After analyzing Frisby and Madsen, Judge Martin concluded that a three-house zone was "no larger than necessary to prevent the targeted homeowner and his family from being captives and to protect their other residential privacy interests."  Id. at 1111.

[3]The court does not discuss the provision of the ordinance prohibiting picketers from remaining within seventy-five feet of a dwelling for longer than five minutes.  I believe this provision is easily sustainable under the combined authorities of Frisby, Madsen, and Douglas.

the targeted residence.  <u>Id.</u> at *9.  We did not define the outer limits of a restricted picketing zone, but we reiterated that <u>Frisby</u> requires us to ensure that the ordinance impacts protected speech no more than necessary to eliminate the evil it seeks to remedy.  <u>Id.</u> (citing <u>Frisby</u>, 487 U.S. at 483-88).  Such an inquiry requires a close examination of the record.

The record in <u>Douglas</u>, like the record in this case, shows the numerous complaints made by neighbors of the targeted resident.  <u>See</u> <u>id.</u> These records are different from that in <u>Frisby</u> in which the picketers congregated only in front of the targeted physician's home.  487 U.S. at 476.  There is no question that the  significant residential privacy interests described in <u>Frisby</u> carry over to the nearby neighbors.  The neighbors have, at least, an interest in privacy equal to the targeted resident.  The neighbors are entirely innocent bystanders, and are subject to the proximal fallout from the picketing directed at the true target of the picketing.  It is entirely fortuitous that the neighbors are subject to the picketing.  The picketers, of course, seek to directly influence the targeted resident.  The picketers subject the neighbors to picketing in an effort to have the neighbors' voice their displeasure and also indirectly influence the targeted resident.  As the findings from the preliminary injunction hearing demonstrate, neighbors of the targeted residents made numerous complaints about the picketing.

The district court made findings about the impact the picketing had on residents of the neighborhood who were not the targets of the picketing. Many of the residents would not allow children to play outside when the picketers were present, in part, because they found the graphic signs offensive and felt children should not be exposed to such materials. Results of neighborhood surveys conducted by the Fargo Police Department showed that an overwhelming majority of residents felt the picketing was annoying

and harassing, and negatively impacted their sense of neighborhood well-being, tranquility, privacy, and the enjoyment of their homes. The 200-foot zone takes into consideration the substantial interests of these neighbors and does so in an area less than that forbidden by Madsen. 114 S. Ct. at 2529-30. As a practical matter, the 200-foot zone covers the neighboring house, and possibly the house beyond that. The ordinance does not prohibit general marching through the neighborhood, it only prohibits the targeted picketing of an individual within 200 feet of that person's home. Considering the specific and careful findings made by the council before adopting the ordinance, as well as the findings of the district court, I believe that the city adopted a reasonable balance between the privacy interests of the neighborhood residents and the First Amendment interests of the picketers.

With respect to the restricted picketing zone, I believe that the zone which bans picketing in front of the targeted residence and for 150 feet on either side of the targeted resident's lot, is sustainable under the authority of Frisby, Madsen, and Douglas.[4] Considering the particular lots in question, the zone covers, at most, two houses on each side of the targeted residence. The zone is, in reality, much smaller than that in Madsen because the zone here covers only the targeted residence plus an adjacent 150 feet. The zone in Madsen covered an area 300 feet in any direction. 114 S. Ct. at 2522. The findings surrounding the entry of the preliminary injunction specify the impact the picketing had on these nearby residences. The court today does no more than say that the speech free zone "is simply too large," totally ignoring the facts in the record. I think this conclusionary approach to a significant constitutional issue is too broad and too vague in

---

[4]I have no quarrel with the court's conclusion that the dispute about the restricted picketing zone is not moot.

treating a serious and substantial concern to the residents of that area.

Finally, I see no constitutional infirmity with allowing the Board of City Commissioners to establish a Restricted Picketing Zone upon an application of a resident. I simply point out that before the Commissioners may authorize a restricted picketing zone, an applicant must satisfy significant procedural requirements. I think we must accept counsel for Fargo's assurances that the Board will establish such a zone only if the picketing interferes with residential privacy and tranquility.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.