# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 99-2146

———————

Timothy Thorburn, Monsignor; Pam
Tabor; Dominic Pynes; Mary Adam,
Individuals,

      Plaintiffs - Appellants,

v.

William Austin, in his official capacity
as Lincoln City Attorney; Thomas
Casady, in his capacity as Chief of
Lincoln Police Department,

      Defendants - Appellees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Nebraska.

———————

Submitted: December 13, 1999

Filed: October 19, 2000

———————

Before MURPHY, JOHN R. GIBSON, and FAGG, Circuit Judges.

———————

JOHN R. GIBSON, Circuit Judge.

      Monsignor Timothy Thorburn, Pam Tabor, Dominic Pynes, and Mary Adam appeal the district court's[1] summary judgment upholding a Lincoln, Nebraska ordinance

———————

[1]The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

that prohibits focused residential picketing in a defined zone. See Thorburn v. Roper, 39 F. Supp. 2d 1199 (D. Neb. 1999). The appellants contend that the ordinance is unconstitutional, asserting the same broad range of arguments here that they made to the district court. We affirm.

The ordinance provides:

(a)  It shall be unlawful for any person to engage in focused picketing in that portion of any street which abuts on the property upon which the targeted dwelling is located, or which abuts on property within fifty feet (measured from the lot line) of the property upon which the targeted dwelling is located, except the sidewalk space on the opposite side of the street from the targeted dwelling.
(b)  For the purposes of this section, the following definitions shall apply:
    (1)  **Focused picketing** shall mean picketing directed toward a specific person or persons including, but not limited to, marching, congregating, standing, parading, demonstrating, parking, or patrolling by one or more persons, with or without signs.
    (2)  **Sidewalk space** shall mean that portion of a street between the curb line and the adjacent property line.
    (3)  **Street** shall mean the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel.
    (4)  **Targeted dwelling** shall mean any building or dwelling unit within a building, in which the target or targets of focused picketing reside.
(c)  This section shall not apply to any picketing, focused or otherwise, which lawfully occurs before or about any commercial or industrial establishment or business, regardless of where located.
(d)  This section shall not be construed to authorize conduct which is otherwise prohibited by law.

Lincoln, Neb., Mun. Code § 9.40.090 (Supp. 1999). Thus, the ordinance prohibits focused picketing that is directed toward a particular person in a rectangular zone in front of that person's dwelling and extending 50 feet on either side of the lot. The zone

includes the street area within the same range, but does not include the sidewalk space across the street from the targeted dwelling.

The Lincoln City Council's statement of legislative intent indicates that the main purpose of the ordinance is to preserve

> the right of privacy and the feeling of well-being and tranquility which the members of the community should enjoy in their dwellings. The practice of focused picketing before or about a dwelling, targeted at the occupant or occupants of such dwelling, causes emotional disturbance and distress to the occupant or occupants, [and] disturbs the sense of peace and tranquility traditionally enjoyed by individuals in their dwellings.

Lincoln, Neb., Ordinance 17164 §1 (Apr. 7, 1997).

Since the enactment of the ordinance, the city of Lincoln has issued four citations for its violation. In February 1998, two individuals, neither a party to this action, stood on the sidewalk at the end of Dr. Winston Crabb's driveway yelling such things as "You need to stop killing babies" and "You are going to go to hell." Crabb is a Lincoln physician who performs abortions. The police, after arriving at the scene, issued citations. Six months later, the same two individuals were issued citations after they stood on the sidewalk in front of Crabb's house and yelled, "You are going to meet your maker" and "The killing has got to stop."

The appellants have deeply held religious and moral beliefs that abortion is wrong. In the past, Tabor, Pynes, and Adam have engaged in protests against abortion at the Lincoln Planned Parenthood clinic. Adam has also protested near the Crabb residence. Thorburn has considered standing, kneeling, or walking without a sign on the sidewalk in front of the Crabb residence to pray for Crabb's soul and to pray that he stop performing abortions. Since the ordinance was passed, however, he has refrained from these activities because he fears prosecution. The other three appellants

have also refrained from a variety of activities because they fear prosecution under the ordinance. These activities include praying on the sidewalk in front of the Crabb residence, planning peaceful prayer vigils to be held in front of the Crabb residence, distributing leaflets and gathering signatures on petitions by going door-to-door, carrying signs protesting abortion in front of the Crabb residence, and walking on the sidewalk around the block on which the Crabb residence is located.

The appellants brought this action seeking to have the ordinance declared unconstitutional, both facially and as applied to the circumstances under which they propose to act. The district court granted summary judgment denying relief. The court held that the ordinance does not violate the First Amendment because it is content-neutral, it leaves open ample alternative channels of communication, and it is narrowly tailored to serve the significant government interest of protecting residential privacy and tranquility. See Thorburn, 39 F. Supp. 2d at 1204-10. The court also held that the ordinance is not unconstitutionally vague because it gives notice of the conduct prohibited and contains adequate guidelines for law enforcement. See id. at 1210-12. It further held that the ordinance is not overbroad. See id. at 1215. Finally, the court rejected the claim that the ordinance violates equal protection. See id.

## I.

Picketing, as expressive conduct, is clearly protected under the First Amendment. See Police Dep't v. Mosley, 408 U.S. 92, 99 (1972). The First Amendment does not prohibit all governmental regulation of speech; the extent to which speech may constitutionally be regulated, however, depends on the nature of the forum in which the regulation operates. See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45-46 (1983). The Lincoln ordinance affects activity on public sidewalks and streets: "the archetype of a traditional public forum." Frisby v. Schultz, 487 U.S. 474, 480 (1988). In a public forum, the government may "enforce regulations of the time, place, and manner of expression which are content-neutral, are

narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Perry, 460 U.S. at 45. A content-based regulation is presumptively invalid. See R.A.V. v. City of St. Paul, 505 U.S. 377, 382 (1992). For such a regulation to be upheld, it must be necessary to serve a compelling government interest and narrowly tailored to achieve its end. See Perry, 460 U.S. at 45.

Because the Lincoln ordinance regulates protected speech in a public forum, we first determine whether the ordinance is content-neutral or content-based in order to apply the appropriate level of scrutiny. The government cannot regulate speech because it disagrees with the message conveyed. See Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). After oral argument in this case, the Supreme Court reaffirmed that "government regulation of expressive activity is 'content neutral' if it is justified without reference to the content of regulated speech." Hill v. Colorado, 120 S. Ct. 2480, 2491 (2000); see also Ward, 491 U.S. at 791. Lincoln does not disagree with a particular message; the ordinance applies equally to anyone engaged in focused picketing without regard to his message. Because Lincoln's justification for the ordinance is the protection of residential privacy and tranquility and has nothing to do with the content of the regulated speech, the ordinance is content-neutral.

The appellants concede that the First Amendment allows content-neutral ordinances that limit residential picketing, but they argue that the Lincoln ordinance is a content-based restriction. They base this argument on several things: Lincoln Chief of Police Thomas Casady's testimony defining picketing, the fact that the ordinance prohibits picketing that is directed toward a targeted person, the exception for picketing that occurs across the street from a targeted dwelling, and the city attorney's statement that the ordinance would not be applied to picketing in front of the governor's mansion directed toward the governor as an elected official.

Although picketing is not explicitly defined in the text of the Lincoln ordinance, it may include marching, congregating, standing, parading, demonstrating, parking, or patrolling, with or without signs. Casady testified that it is commonly understood that picketing means "some form of demonstration, issue-oriented demonstration, on a topic in controversy aimed at influencing, changing an opinion, or making an opinion known." Based on this testimony, the appellants argue that the only way for officers to determine whether a person is picketing is to examine whether he is engaged in an issue-oriented demonstration, whether the issue is one of controversy, and whether he is attempting to influence opinions. Therefore, according to the appellants, the ordinance is content-based.

The Supreme Court rejected a similar argument in Hill. The petitioners argued that a statute that prohibited knowingly approaching within eight feet of a person near the entrance of a health care facility "for the purpose of . . . engaging in oral protest, education, or counseling" was content-based because it was necessary to examine the content of the approaching speaker's statements to determine whether he was violating the statute. See Hill, 120 S. Ct. at 2491. The Court held that the ordinance was content-neutral, see id. at 2494, stating that it had "never held, or suggested, that it is improper to look at the content of an oral or written statement in order to determine whether a rule of law applies to a course of conduct," id. at 2492.

The appellants rely on Kirkeby v. Furness, 92 F.3d 655 (8th Cir. 1996), where we held the definition of picketing contained in a residential picketing ordinance to be content-based. The ordinance defined picketing as activity engaged in "for the purpose of persuading the public or an occupant of such premises or to protest some action, attitude or belief." Id. at 659. Because it was impossible to tell whether a person was engaged in picketing without analyzing his message, we held that the limitation was not justified without reference to content. See id. Hill rejected this sort of analysis.

According to the Court's opinion in Hill, the necessity of looking at the content of a speaker's message to determine whether it was protest, education, or counseling is no different from determining whether particular conduct constitutes picketing. See 120 S. Ct. at 2492. Picketing, by definition, excludes "social, random, or other everyday communications," but the Court has "never suggested that the kind of cursory examination that might be required to exclude casual conversation from the coverage of a regulation of picketing would be problematic." Id. Engaging in demonstrations and attempting to influence opinions are inherent in picketing. Hill requires that we reject the appellants' argument that Casady's definition of picketing makes the Lincoln ordinance content-based.

The appellants next argue that because focused picketing must be "directed toward a specific person or persons" to violate the ordinance, the ordinance is content-based. They again direct us to Kirkeby, where we held that an ordinance prohibiting residential picketing that identified an occupant orally or in writing was content-based. See 92 F.3d at 660 ("Whether an individual's expressive activity is regulated depends entirely on whether the content of his or her expression identifies a resident."). Kirkeby is inapposite. Here, there is no requirement that the picketer's message identify the targeted resident.

We see nothing content-based in the use of the words "directed toward." The nature of focused picketing is that it is directed at a particular residence and its occupants. The Lincoln City Council took its cue from the Supreme Court's decision in Frisby, which upheld a ban on residential picketing by construing it to prohibit only focused picketing. In its analysis, the Court stated, "[I]n order to fall within the scope of the ordinance the picketing must be directed at a single residence," Frisby, 487 U.S. at 483, and "[T]he picketing is narrowly directed at the household, not the public," id. at 486. We later repeated this language in Douglas v. Brownell, 88 F.3d 1511, 1517, 1519 (8th Cir. 1996), where we upheld an ordinance that prohibited focused residential

picketing in a three-house zone. Lincoln's attempt to comply with cases that have upheld residential picketing ordinances does not make the ordinance content-based.

In a related argument, the appellants contend that the ordinance's exception for picketing that occurs across the street from the targeted dwelling creates a content-based restriction. The appellants argue that because the ordinance either bans or allows the same expressive activity depending on whether it is directed at an occupant of the house on one side of the street or the other, the ordinance is implicitly content-based. The across-the-street exception regulates location, not content. The very fact that picketing is occurring solely in front of one house is evidence that the picketing is directed toward that particular house. Simply because the content of the message may provide either evidence of targeting or a defense to the allegation of targeting does not make the ordinance content-based. See Hill, 120 S. Ct. at 2492.

Finally, the appellants argue that the Lincoln City Attorney's response to an interrogatory regarding picketing in front of the governor's mansion makes the ordinance content-based. The city attorney stated that because the mansion is a public building, Lincoln would not apply the ordinance to focused picketing "the purpose of which is to influence the Governor as an elected official on an issue of public concern." The city would consider applying the ordinance, however, if the picketing were directed at another occupant of the mansion or at the governor as an individual. The only way to distinguish between picketing directed toward the governor as an individual and picketing directed toward the governor as an elected official would be to look at the content of the picketer's message. The ordinance appears to apply to either type of picketing. We are not persuaded that the city attorney's response demonstrates that the ordinance is content-based. Instead, the response seems to be an attempt to address the unique nature of the governor's mansion as a public building and does not indicate that Lincoln is regulating speech because it disagrees with its content.

Having concluded the ordinance is content-neutral, we must determine whether it is narrowly tailored to serve a significant government interest and whether it preserves ample alternative channels of communication. We leave the issue of narrow tailoring to one side for a moment and briefly address the uncontested issues. Protecting residential privacy and tranquility is a significant government interest, see Frisby, 487 U.S. at 484-85, and the appellants do not quarrel with that conclusion. Nor do they dispute that the ordinance allows ample alternative methods of communication. The ordinance is limited to activity focused on a particular residence and does not prohibit general dissemination of a message. See id. at 483-84. Those who wish to engage in protest activity in residential areas are free to march through neighborhoods, walk a route in front of a block of houses, distribute literature and collect signatures on petitions by going door-to-door, and even picket across the street from a targeted dwelling.

One question remains: whether the ordinance is narrowly tailored. A narrowly tailored statute "targets and eliminates no more than the exact source of the evil it seeks to remedy." Frisby, 487 U.S. at 485 (internal quotations omitted). The statute need not be the least restrictive means of regulation, but it must further a significant government interest that would be achieved less effectively without the regulation. See Ward, 491 U.S. at 798-99. "Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." Id. at 799.

The appellants argue that the ordinance targets more than the exact source of the evil the government seeks to prevent. For example, they contend that a solitary person who is silently praying for Crabb and who happens to pass by the Crabb residence would violate the ordinance. No one who simply happens to pass by a house will be violating the ordinance; passing a house by chance is not focused picketing. A solitary person who stands in front of the Crabb residence silently praying for Crabb may be violating the ordinance, however. "[E]ven a solitary picket can invade residential

privacy," Frisby, 487 U.S. at 487, and this invasion is the sort of harm the ordinance seeks to prevent.

The appellants also argue that the ordinance is underinclusive, resting this contention on the across-the-street exception. They claim that the exception undermines the purpose of the ordinance because it fails to protect the privacy and tranquility of the residents who live across the street from the target. While it is true that exceptions from a legitimate regulation of speech may diminish the credibility of the government's reasons for the regulation, see City of Ladue v. Gilleo, 512 U.S. 43, 52 (1994), we do not perceive that to be the case in this situation. The city of Lincoln was merely attempting to comply with earlier Eighth Circuit case law that held that an ordinance was narrowly tailored and provided ample alternative channels of communication where it implicitly allowed picketing across the street from a targeted dwelling. See Douglas, 88 F.3d at 1520-21.

"[T]he validity of the regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case." Ward, 491 U.S. at 801. Here, the overall problem is the threat to residential privacy and tranquility caused by focused picketing. We are confident that the ordinance furthers Lincoln's significant interest in reducing this threat even though individual situations may arise where picketers who choose to take advantage of the exception threaten the privacy and tranquility of the residents who live across the street from the target. Obviously, the exception is an attempt to preserve free speech rights as much as possible while reducing the threat to residential privacy. We will not invalidate the ordinance for showing too much solicitude for speech. Because the ordinance promotes residential privacy and tranquility, a significant interest that would be achieved less effectively in its absence, we hold that it is narrowly tailored.

## II.

The appellants argue that the ordinance is unconstitutionally vague. In order to survive a vagueness challenge, a law must provide fair warning by "giv[ing] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). It must also provide "explicit standards" for those who will apply the law in order to prevent arbitrary or discriminatory enforcement. Id. at 108-09.

The Lincoln ordinance includes specific definitions of focused picketing, sidewalk space, street, and targeted dwelling. It delineates precisely the zone in which focused picketing is prohibited. Perhaps the ordinance could have been more exact, but the fact that questions may arise regarding its applicability to certain conduct does not automatically lead to the conclusion that it is void for vagueness. On remand in Frisby, the Seventh Circuit addressed the plaintiffs' concern with the difficulties in determining whether picketing is directed at a particular residence:

> Will it be enough to go 'round and 'round the block? Could the picketers march in front of the five houses on either side of the [targeted dwelling]? May they stop for one minute, or two, or five, in front of the [targeted dwelling] before moving along? . . . How much longer must the route be? No matter how clear the ordinance seems, a hundred nice questions may follow in its wake. The Constitution does not require [the city] to answer each of these before it may enforce the law. Incompleteness is a curse of language, as of human imagination. To say that precision is a precondition to enforcement is to say that no ordinance regulating speech may stand--a proposition the Supreme Court has rejected over and again.

Schultz v. Frisby, 877 F.2d 6, 8 (7th Cir. 1989). The Lincoln ordinance provides fair warning of the conduct that is prohibited. A person of ordinary intelligence can conclude that if he marches, congregates, stands, parades, demonstrates, parks, or patrols in the protected vicinity of the dwelling of the person he intends to target,

-11-

directing his picketing at that person, he is subject to prosecution under the Lincoln ordinance. The ordinance gives the appellants fair warning that they cannot pray on the sidewalk in front of the Crabb residence, hold prayer vigils in front of the Crabb residence, or carry signs in front of the Crabb residence without subjecting themselves to prosecution.

The ordinance does not leave those who are enforcing it with unfettered discretion to determine whether a violation has occurred. The deposition testimony of the Lincoln police officers indicates that they would respond in similar ways to situations that might fall within the ordinance's scope. This case is distinguishable from Foti v. City of Menlo Park, where the Ninth Circuit held that a provision of a picketing ordinance was unconstitutionally vague because "myriad" factors had to be evaluated when attempting to enforce the provision. 146 F.3d 629, 638-39 (9th Cir. 1998). As discussed above, the ordinance includes specific definitions and clearly delineates the zone in which focused picketing is prohibited. Police officers will have to use discretion to determine whether an activity is picketing and whether it is focused, but enforcement of all laws involves some discretion. See, e.g., Hill v. Colorado, 120 S. Ct. 2480, 2498-99 (2000); Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989) ("While these standards are undoubtedly flexible, and the officials implementing them will exercise considerable discretion, perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."); Grayned, 408 U.S. at 110-14. Because there is no real risk of discriminatory enforcement and because the ordinance makes clear what conduct it prohibits, we hold that it is not unconstitutionally vague.

**III.**

The appellants also contend that the ordinance is overbroad. For us to find a statute unconstitutionally overbroad, its "overbreadth . . . must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973). Prohibiting focused residential picketing is plainly legitimate. The appellants give two examples of protected activity that may be prohibited by the ordinance: welcomed speech and solitary prayer. Assuming welcomed focused residential picketers exist, we agree with the district court that their First Amendment rights will not be significantly compromised. See Thorburn v. Roper, 39 F. Supp. 2d 1199, 1214 (D. Neb. 1999). It is improbable that those who welcome the picketing will complain to the police. Even if the police were aware of the picketing, the target could invite the picketers onto his lawn, where the ordinance would not apply. See id. As to the appellants' second example, even a solitary picketer can intrude upon residential privacy. See Frisby v. Schultz, 487 U.S. 474, 487 (1988). An individual engaged in an activity that is directed at a specific person in the defined zone falls within the legitimate sweep of the ordinance. We are not convinced that the overbreadth in this situation is real, much less substantial. There is no realistic danger that the ordinance will compromise the First Amendment rights of others who are not before us. See Members of the City Council v. Taxpayers for Vincent, 466 U.S. 789, 801 (1984).

## IV.

Finally, the appellants argue that the ordinance violates the Equal Protection Clause of the Fourteenth Amendment because it discriminates between picketers depending on the content of their message. See Carey v. Brown, 447 U.S. 455 (1980) (holding that ordinance violated equal protection where it banned all residential picketing except picketing of a place of employment involved in a labor dispute); Police Dep't v. Mosley, 408 U.S. 92 (1972) (exempting labor picketing from ban on picketing near schools violated equal protection). The appellants' equal protection argument is premised on their argument that the ordinance is content-based. As we have already determined that the Lincoln ordinance is content-neutral, this argument necessarily fails.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.