Monsignor Timothy **THORBURN**, Pam Tabor, Dominic Pynes, and Mary Adam, Individuals, Plaintiffs,

v.

Dana **ROPER**, in his official capacity as Lincoln City Attorney, and Thomas Casady, in his capacity as Chief of the Lincoln Police Department, Defendants.

No. 4:98CV3286.

United States District Court, D. Nebraska.

March 25, 1999.

Vollis E. Summerlin, Jr., Krista L. Kester of Ogborn, Summerlin Law Firm, Lincoln, NE, for the plaintiffs.

William F. Austin, Erickson, Sederstrom Law Firm, Lincoln, NE, and John C. McQuinn, II, City Attorney's Office, Lincoln, NE, for the defendants.

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFFS' MOTION FOR ORAL ARGUMENT

URBOM, Senior District Judge.

The plaintiffs, Monsignor Timothy Thorburn, Pam Tabor, Dominic Pynes, and Mary Adam, are individuals who have engaged in protests and demonstrations against abortion. The plaintiffs have brought this action against the defendants, the Lincoln City Attorney and the Chief of the Lincoln Police Department, seeking declaratory and injunctive relief from the application of Lincoln Municipal Code § 9.40.090, which is an ordinance that places certain restrictions on residential picketing. The defendants filed a Motion for Judgment on the Pleadings, filing 8, arguing that the ordinance is constitutional. The plaintiffs then filed a Motion for Summary Judgment, filing 17. Since the plaintiffs have submitted evidence in support of their Motion for Summary Judgment and since the defendants have also submitted evidence, I shall treat the plaintiffs' Motion for Summary Judgment and the defendants' Motion for Judgment on the Pleadings as cross-motions for summary judgment pursuant to Rule 56 and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure which states that if matters outside the pleadings are presented to the court, then a motion for judgment on the pleadings shall be treated as one for summary judgment. Also, the plaintiffs have filed a Motion for Oral Argument, filing 21. After due consideration, I shall grant summary judgment in favor of the defendants and deny the plaintiffs' Motion for Oral Argument.

*I. Background*

The plaintiffs have deeply held religious, political, and moral beliefs that abortion is wrong. Because of their beliefs, the plaintiffs have engaged in protests and demonstrations against abortion. The plaintiffs claim that their protests and demonstrations have been peaceful and non-violent. Some of these protests and demonstrations have occurred in the vicinity of the Planned Parenthood Clinic where abortions are performed in Lincoln, Nebraska. At least one of the plaintiffs has also engaged in protests in the vicinity of Dr. Winston Crabb's residence. Dr. Crabb is a resident of Lincoln who performs abortions at the Planned Parenthood Clinic in Lincoln.

On April 7, 1997, the City Council of the City of Lincoln passed Ordinance No. 17164 which made it unlawful to engage in focused residential picketing in the street in front of or within fifty feet on either side of a targeted dwelling. This ordinance is sometimes referred to as the "Focused Residential Picketing Ordinance" (hereinafter also referred to as the "ordinance" or the "Lincoln ordinance"). The ordinance was subsequently codified as § 9.40.090 of the Lincoln Municipal Code. The ordinance states:

(a) It shall be unlawful for any person to engage in focused picketing in that portion of any street which abuts on the property upon which the targeted dwelling is located, or which abuts on property within fifty feet (measured from the lot line) of the property upon which the targeted dwelling is located, except the sidewalk space on the opposite side of the street from the targeted dwelling.

(b) For purposes of this section, the following definitions shall apply:

(1) **Focused Picketing** shall mean picketing directed toward a specific person or persons including, but not

limited to, marching, congregating, standing, parading, demonstrating, parking, or patrolling by one or more persons, with or without signs.

(2) **Sidewalk space** shall mean that portion of a street between the curb line and the adjacent property line.

(3) **Street** shall mean the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel.

(4) **Targeted dwelling** shall mean any building or dwelling unit within a building, in which the target or targets of focused picketing reside.

(c) This section shall not apply to any picketing, focused or otherwise, which lawfully occurs before or about any commercial or industrial establishment or business, regardless of where located.

(d) This section shall not be construed to authorize conduct which is otherwise prohibited by law.

Lincoln Municipal Code § 9.40.090.

Since the focused residential picketing ordinance was passed, the Lincoln City Attorney's Office has prosecuted two individuals for violating the ordinance. Those individuals were convicted in the County Court for Lancaster County, Nebraska. The defendants acknowledge that the ordinance has been enforced in the past, and they admit that they intend to continue to enforce it. The plaintiffs allege that as a result of these prosecutions and the difficulty they have encountered in interpreting what is and is not prohibited by the focused residential picketing ordinance, they have had to refrain from their protests of abortion in the vicinity of Dr. Crabb's residence for fear of being cited and prosecuted for violating the ordinance. Specifically, plaintiff Adam complains that as a result of her fear of prosecution she has refrained from certain protests, which may include standing on the sidewalk in front of Dr. Crabb's residence holding a sign protesting abortion, walking on the sidewalk in front of Dr. Crabb's residence

holding a sign protesting abortion, walking around the block on the sidewalk on which his residence is located, kneeling in prayer in the grassy median of the street in front of his residence or on the lawn across the street from his residence, and standing in prayer in the grassy median of the street in front of his residence or on the lawn across the street from his residence. Plaintiff Monsignor Thorburn complains that since the passage of the Lincoln ordinance he has considered going to the vicinity of Winston Crabb's residence in order to quietly stand, kneel, or walk on the sidewalk in front of Dr. Crabb's home without a sign, to pray for the salvation of Dr. Crabb's soul and that Dr. Crabb would cease performing abortions. He states that he has refrained from these activities due to the possibility that he might be cited for unlawful activities under the ordinance. Plaintiff Pynes complains that as a result of the passage of the ordinance, he has concerns that he may be cited for violating the ordinance if he engages in activities such as delivering leaflets to homes, knocking on doors of homes, and speaking personally with the occupants of those homes. Plaintiffs Pynes and Tabor also claim that they have desired to engage in peaceful and non-violent protests against abortion by going to the residence of Dr. Crabb and either praying on the sidewalk in front of his residence or walking around the block upon which Dr. Crabb's residence is located. However, they have refrained from these activities since the passage of the ordinance out of fear of prosecution.

The plaintiffs seek declaratory and injunctive relief on the basis that the ordinance violates their constitutional rights. They claim that the ordinance is unconstitutionally vague, ambiguous, and overbroad, and violates the Freedom of Speech Clause of the First Amendment to the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and/or the Due Process Clause of the

Fourteenth Amendment to the United States Constitution. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

## II. Standard of Review

A motion for summary judgment shall be granted when, viewing the facts and reasonable inferences arising therefrom in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). A "material" fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Id.* In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505 (citations omitted). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED. R.CIV.P. 56(c).

## III. Legal Analysis

The first important issue to address is the nature of the plaintiffs' challenge to the Lincoln ordinance. The plaintiffs con-tend that they are challenging the ordinance on its face and as-applied. "A law may be challenged as unconstitutional in two ways. The law may be challenged 'as applied' and 'facially.'" *Carhart v. Stenberg*, 11 F.Supp2d 1099, 1119 (D.Neb.1998) (citations omitted). "If the law is judged unconstitutional on facts peculiar to the plaintiff, then the law is unconstitutional 'as applied.'" *Id.* (citation omitted). "If, on the other hand, the law is found unconstitutional regardless of how it might be applied to a particular plaintiff then the law is said to be facially unconstitutional." *Id.* The defendants argue that this suit should be analyzed as a facial challenge only because none of the plaintiffs has ever been charged under the ordinance and because the plaintiffs' complaint was cast in terms almost identical to the complaint in *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) in which the Supreme Court determined that the plaintiffs' challenge was only a facial challenge. However, since the plaintiffs argue that the ordinance is unconstitutional on its face as well as under the circumstances in which the plaintiffs propose to act, I shall analyze the plaintiffs' facial and as-applied challenges to the ordinance.

### A. First Amendment Freedom of Speech

The plaintiffs argue that the Lincoln ordinance violates their rights under the First Amendment to the United States Constitution. The First Amendment provides in part that "Congress shall make no law ... abridging the freedom of speech ..." U.S. Const. amend. I. I must apply a three-part test to the plaintiffs' free speech claim. *Pursley v. City of Fayetteville, Ark.*, 820 F.2d 951, 954 (8th Cir.1987). First, I must determine whether the plaintiffs' proposed activity is speech protected by the First Amendment. *Id.* If it is, I must then "'identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic.'" *Id.* (quoting *Cornelius v. NAACP Legal Defense and Educational Fund,*

*Inc.,* 473 U.S. 788, 105 S.Ct. 3439, 3446–47, 87 L.Ed.2d 567 (1985)). Finally, I must decide "whether the justifications for excluding expressive activity satisfy the relevant constitutional standard." *Id.*

There does not appear to be any real dispute with respect to the first two parts of this test. First, there is no question that the plaintiffs' proposed activity is protected by the First Amendment. The plaintiffs claim that they wish to engage in peaceful picketing in front of Dr. Crabb's residence. "There is no doubt that as a general matter peaceful picketing ... [is] expressive activit[y] involving 'speech' protected by the First Amendment." *United States v. Grace,* 461 U.S. 171, 176, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). Additionally, the Supreme Court has found that "[t]here can be no doubt that ... peaceful picketing on the public streets and sidewalks in residential neighborhoods ... [constitutes] expressive conduct that falls within the First Amendment's preserve." *Carey v. Brown,* 447 U.S. 455, 460, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980). Second, it is undisputed that the sidewalk in front of Dr. Crabb's residence where the plaintiffs wish to picket is a public forum. *See Frisby v. Schultz,* 487 U.S. 474, 481, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (stating that "all public streets are held in the public trust and are properly considered traditional public fora"). The more difficult question in this case is with part three of the test; that is, whether the City of Lincoln's justifications for the ordinance satisfy the relevant constitutional standard.

In order to determine whether the Lincoln ordinance passes constitutional muster, I must apply a four-part test. "A time, place and manner restriction on expressive activity in a public forum may be sustained only if the restriction (1) is content-neutral, (2) serves a significant governmental interest, (3) is narrowly tailored to serve that interest, and (4) leaves open ample alternative channels of communication." *Pursley,* 820 F.2d at 955.

### (1) Content Neutrality

Under the content neutrality prong, I must determine whether the Lincoln ordinance is a content-neutral or a content-based restriction on speech. In *Frisby v. Schultz,* 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), the Supreme Court stated that "the appropriate level of scrutiny is initially tied to whether the statute distinguishes between prohibited and permitted speech on the basis of content." *Frisby,* 487 U.S. at 481, 108 S.Ct. 2495. According to the Supreme Court,

> The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.

*Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (emphasis and internal quotation omitted). The Court also stated that "[g]overnment regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech.'" *Id.* (citations omitted).

The principal justification for Lincoln's Focused Residential Picketing Ordinance is the city's interest in "preserving the right of privacy and the feeling of well-being and tranquility which the members of the community should enjoy in their dwellings." Exhibit A, Index of Evidence in Support of Plaintiffs' Brief in Support of Motion for Summary Judgment and in Opposition to Defendants' Motion for Judgment on the Pleadings, filing 18. The Supreme Court has recognized that " '[t]he State's interest in protecting the well-be-

ing, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society.' " *Frisby*, 487 U.S. at 484, 108 S.Ct. 2495 (quoting *Carey v. Brown*, 447 U.S. 455, 471, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980)). In order to preserve this residential privacy and tranquility, the City of Lincoln adopted an ordinance that prohibits focused residential picketing in the street in front of or within fifty feet on either side of a targeted dwelling. Despite the fact that the ordinance is silent with respect to the actual content of the picketer's message and appears to be "justified without reference to the content of the regulated speech," the plaintiffs argue that the Lincoln ordinance is a content-based restriction on their speech.

In support of their argument, the plaintiffs rely on the case of *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). In *Discovery Network*, the Supreme Court considered a Cincinnati ordinance that banned commercial handbills from being displayed in newsracks that were located on public property. The city's stated interest in imposing this ban was to limit the number of newsracks on public property for safety and esthetic reasons. However, rather than simply limiting the number of newsracks, the city's ordinance banned commercial handbills from being displayed in newsracks. The ordinance did not apply to newsracks displaying newspapers. The Supreme Court determined that the Cincinnati ordinance was a content-based restriction because it was "a sweeping ban on the use of newsracks that distribute 'commercial handbills,' but not 'newspapers.' " *Id.* at 429, 113 S.Ct. 1505. Under Cincinnati's ordinance, "whether any particular newsrack falls within the ban is determined by the content of the publication resting inside that newsrack." *Id.*

The plaintiffs argue that, like the ordinance in *Discovery Network*, the Lincoln ordinance is a content-based restriction because whether a given person's picketing falls within the scope of the Lincoln ordi-

nance is determined by the content of that picketer's message. For example, the plaintiffs argue that if a picketer's message is "directed toward a specific person," if the message "identif[ies] that individual by name or photograph, or their position, or if the issue that was discussed on the sign was an issue with which the person that was a potential target was intimately or closely connected," then the picket is in violation of the ordinance. Brief in Support of Plaintiffs' Motion for Summary Judgment, at 14–15 (citing Casady Dep. at 37:18–24). Thus, according to the plaintiffs, the picketer whose message identifies a "target" is banned from picketing in front of the target's residence while the picketer offering a non-specific message is not banned.

To illustrate their point, the plaintiffs use a hypothetical example. They argue that a picketer in front of Dr. Crabb's house with a sign that reads "Abortion is Murder" is in violation of the Lincoln ordinance, but a picketer in front of Dr. Crabb's house with a sign which reads "Eat at Joe's" is not. *Id.* at 19 (citing Casady Dep. at 50:1–11). This hypothetical, the plaintiffs argue, shows that the Lincoln ordinance is content-based because it is the content of the picketer's message that determines whether that picketer is in violation of the ordinance.

The plaintiffs' hypothetical and their reliance on *Discovery Network* are not persuasive. The Lincoln ordinance is distinguishable from the Cincinnati ordinance because under the Cincinnati ordinance, the only way for a person to determine if a newsrack was in violation of the ordinance was to inspect the contents of the item inside the newsrack. If it was a commercial bill, then it was in violation of the ordinance. If it was a newspaper, it was not. Under the Lincoln ordinance, however, picketers may be found to be in violation of the ordinance without regard to the content of their message. For example, if a group of picketers march back and forth for hours on end in front of Dr.

Crabb's house with signs reading "Eat at Joe's" or without any signs at all, a reasonable person could conclude, based on the picketers' conduct, that they are engaged in focused picketing in violation of the Lincoln ordinance. The content of their message is not the controlling factor in determining whether they are in violation of the ordinance. What is controlling is whether the picketers' conduct shows that they are engaged in focused picketing. Simply because some picketers may choose to identify their target in the content of their message, and therefore may be cited or arrested sooner than those who do not identify their target, does not mean that the ordinance is content-based. It simply means that it will be easier to conclude that these picketers are engaged in focused residential picketing. An actual violation of the Lincoln ordinance occurs, not because of the content of the picketers' message, but because of the fact that they are engaged in focused picketing. It is the focused picketing in front of a targeted dwelling that jeopardizes residential privacy and tranquility, not the content of the actual message. In contrast to the Cincinnati ordinance in *Discovery Network*, the Lincoln ordinance is "justified without reference to the content of the regulated speech." *Ward*, 491 U.S. at 791, 109 S.Ct. 2746.

The plaintiffs also rely on the Eighth Circuit's decision in *Kirkeby v. Furness*, 92 F.3d 655 (8th Cir.1996), in support of their argument that the Lincoln ordinance is content-based. In *Kirkeby*, the Eighth Circuit found that a city ordinance that banned targeted residential picketing was content-based. In *Kirkeby*, the City of Fargo had a picketing ordinance that defined targeted residential picketing as "picketing that identifies an occupant (either orally or in writing) within two hundred feet of a dwelling, blocking access to a dwelling, or maintaining a presence within seventy-five feet of a dwelling for longer than five minutes at a time." *Kirkeby*, 92 F.3d at 658. Fargo's ordinance defined picketing as "standing, marching, sitting, lying, patrolling or otherwise maintaining a physical presence inside of, in front, or about any premises for the purpose of persuading the public or an occupant of such premises or to protest some action, attitude or belief." *Id.* at 659 (quoting Fargo Municipal Code, art. 10–0801(2)). In determining that the Fargo ordinance was content-based, the *Kirkeby* court found that it was "impossible to tell whether a stander, marcher, patroller, etc., is 'picketing' without analyzing whether he or she intends to convey a 'persuasive' message or to 'protest some action, attitude or belief.'" *Id.*

The ordinance in *Kirkeby* is distinguishable from the Lincoln ordinance because the Lincoln ordinance does not require law enforcement officials to analyze the picketers' message in order to determine if there is a violation. Picketers may violate the Lincoln ordinance without regard to the specific content of their message, and possibly without even carrying signs or verbally expressing any opinion whatsoever. It is the totality of the circumstances which determines whether picketers are in violation of the Lincoln ordinance, not necessarily the content or purpose of their message. Notably, the *Kirkeby* court did not find that the Fargo ordinance was content-based because of the "focused" nature of the ordinance. Instead, the court's finding was based on the fact that one had to interpret the content of the message in order to determine if the picketer was intending "to convey a 'persuasive' message or to 'protest some action, attitude or belief.'" *Kirkeby*, 92 F.3d at 659. The Lincoln ordinance contains no such interpretive requirement. It is the conduct of focused picketing that is prohibited by the Lincoln ordinance, not the content of the picketer's message. Because the Lincoln Ordinance is "'justified without reference to the content of the regulated speech,'" I conclude that it is content-neutral and not content-based. *See Rock*, 491 U.S. at 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (citations omitted).

## (2) Significant Governmental Interest

When the government imposes a content-neutral restriction upon free speech in a traditional public forum, the ban imposed must be "narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication." *Frisby*, 487 U.S. at 481, 108 S.Ct. 2495 (citation omitted). The governmental interest of the Lincoln ordinance can be found in section 1 of the ordinance. It states:

> It is the intent of this ordinance to protect the public health, safety, and welfare of the citizens of Lincoln, Nebraska, and the good order of the community, by preserving the right of privacy and the feeling of well-being and tranquility which the members of the community should enjoy in their dwellings. The practice of focused picketing before or about a dwelling, targeted at the occupant or occupants of such dwelling, causes emotional disturbance and distress to the occupant or occupants, disturbs the sense of peace and tranquility traditionally enjoyed by individuals in their dwellings, and obstructs and interferes with the free use of public sidewalks and public streets. Focused picketing before or about residences or dwellings has, as its object, the harassment of the occupants of the targeted dwelling or residence. Without resort to this practice, full opportunity exists and will continue to exist, in other appropriate locations, for the free flow of ideas, and the exercise of freedom of speech or expression and other constitutional rights.

Exhibit A, Index of Evidence in Support of Plaintiffs' Brief in Support of Motion for Summary Judgment and in Opposition to Defendants' Motion for Judgment on the Pleadings, filing 18. The Supreme Court has recognized, and the Eighth Circuit has acknowledged, that the protection of residential privacy and tranquility is a substantial governmental interest. *See Kirkeby*, 92 F.3d at 659 (citing *Frisby*, 487 U.S.

at 488, 108 S.Ct. 2495). In light of the purpose of the Lincoln ordinance and in light of the *Kirkeby* and *Frisby* cases, I find that the City of Lincoln had a significant governmental interest in passing its focused picketing ordinance.

### (3) Narrowly Tailored

 The Lincoln ordinance must be narrowly tailored to serve the city's legitimate interests. "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby*, 487 U.S. at 485, 108 S.Ct. 2495 (citation omitted). "A complete ban can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil." *Id.* The targeted "evil" in this case is the disturbance of residential privacy and tranquility.

The plaintiffs argue that since the ordinance is content-based, the ban must be the least restrictive means of accomplishing the government's objective. However, the plaintiffs' argument is inapposite because I have determined that the ordinance is not content-based but instead is content-neutral. In *Ward v. Rock Against Racism*, the Supreme Court reaffirmed that "a regulation of time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that *it need not be the least restrictive means of doing so.*" *Rock*, 491 U.S. at 798, 109 S.Ct. 2746 (emphasis added). Instead, the Supreme Court found that "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest, ... the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800, 109 S.Ct. 2746. The question, therefore, is whether the Lincoln ordinance is substantially broader than necessary to achieve the city's interest in preserving residential privacy and tranquility. *See Members of*

*City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

The plaintiffs argue that the Lincoln ordinance is substantially broader than necessary to achieve the city's interest apparently because it may prohibit some of the activities in which they wish to engage. For instance, the ordinance would prohibit plaintiff Monsignor Thorburn from standing in front of Dr. Crabb's residence in silent prayer praying that Dr. Crabb cease performing abortions, even if Monsignor Thorburn is unknown to Dr. Crabb or his family. Also, the plaintiffs argue that the ordinance would prohibit plaintiff Pynes from going door-to-door in Dr. Crabb's neighborhood to hand out literature to Dr. Crabb and his neighbors advocating an end to abortion. The other plaintiffs fear they will be in violation of the ordinance if they march around the block on which Dr. Crabb lives carrying signs protesting against abortion and their route carries them along the sidewalk in front of Dr. Crabb's house. In short, the plaintiffs claim that the ordinance is not narrowly tailored because it bans silent vigils of any duration in front of Dr. Crabb's residence, general marching through residential neighborhoods, and going door-to-door to discuss issues or pass out literature.

Contrary to the plaintiffs' assertions, it does not appear that the ordinance prohibits a person from engaging in door-to-door leafleting in residential neighborhoods and speaking to residents regarding their views on abortion. A plain reading of the ordinance suggests that such conduct is not prohibited, and the defendants have acknowledged that such activities "are *not*, without more, violations of the Focused Residential Picketing Ordinance." Brief in Opposition to Plaintiffs' Motion for Summary Judgment, at 9.[1] The defendants acknowledge that "this [o]rdinance most emphatically does not prohibit door to door contact with residents." *Id.* at 12. Similarly, the ordinance does not prohibit general marching through residential neighborhoods. Nothing in the language of the ordinance suggests that general marching or picketing throughout a residential neighborhood is prohibited. The defendants have acknowledged as much in their arguments, stating that "[t]he [o]rdinance does not prohibit marching or parading through any residential district and it does not prohibit such parading or marching even if the route thereof is directly in front of and on the same side of the street as Dr. Crabb's residence. This is so because a parade or march, in most situations, does not reach the threshold element of targeting." *Id.* at 11. Since the Lincoln ordinance does not appear to ban general marching, general picketing, door-to-door leafleting, or speaking with residents about their views on abortion, the plaintiffs' arguments with respect to these issues are not persuasive.[2]

The plaintiffs further argue that the ordinance is not narrowly tailored because it eliminates certain speech which does not infringe on residential privacy and tranquility while failing to prohibit other speech that does. For example, one or more of the plaintiffs apparently would like to stand in front of Dr. Crabb's residence and pray for the salvation of his soul and that he cease performing abortions. Also, one or more of the plaintiffs wish to engage in a peaceful, non-violent, silent, solitary protest in front of Dr. Crabb's

---

1. I recognize that the defendants' arguments in their brief are not evidence, but I cite them only to point out that the defendants' arguments and interpretation of the ordinance are consistent with a plain reading of the ordinance.

2. My finding that the ordinance does not prohibit general marches or door-to-door leafleting does not mean that a picketer or group of picketers may not be cited for a violation of the ordinance simply because they claim to be involved in these activities. If the surrounding circumstances objectively suggest that the picketers are engaged in "focused picketing" in front of a targeted dwelling, then it is entirely possible that they might be cited for violating the ordinance.

house carrying a sign which reads, "A Child Is Not A Choice." According to the plaintiffs, such activities do not amount to the "evil" that the ordinance was designed to protect, yet those activities are prohibited under the ordinance. On the other hand, the plaintiffs argue that the Lincoln ordinance does not prohibit a loud, angry group of protestors marching outside of Dr. Crabb's house loudly denouncing President Clinton while carrying signs describing in graphic detail the sexual misdeeds of the President. According to the plaintiffs, this loud, disturbing group would undoubtedly intrude upon one's residential privacy and tranquility, yet such activities are not prohibited by the ordinance. The plaintiffs argue that by removing the quiet and peaceful pro-life protestor while leaving the loud and boisterous impeachment protestors to continue their tirade, the Lincoln ordinance not only restricts far more speech than necessary to eliminate the evil sought to be protected, the ordinance fails to restrict speech that clearly constitutes the evil which the city sought to avoid.

It is true that the ordinance prohibits the types of silent, solitary protests listed above in which the plaintiffs wish to engage. However, this does not mean that the ordinance is not narrowly tailored to serve the interests the city seeks to protect. To the contrary, such focused picketing appears to be precisely one of the "evils" the city was trying to prevent when it enacted the ordinance. The Supreme Court has recognized that "the actual size of the group is irrelevant; even a solitary picket can invade residential privacy." *Frisby*, 487 U.S. at 487, 108 S.Ct. 2495. The Court has stated that the target of a focused picketer is essentially a "captive," who is "figuratively, and perhaps literally, trapped within the home, and because of the unique and subtle impact of such picketing is left with no ready means of avoid-

ing the unwanted speech." *Id. See also Carey v. Brown*, 447 U.S. 455, 478–79, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) (Rehnquist, J., dissenting) ("Whether . . . alone or accompanied by others . . . there are few of us that would feel comfortable knowing that a stranger lurks outside our home."). Since even the silent, solitary picketer may infringe upon the residential privacy and tranquility of a targeted resident, it is appropriate that the ordinance prohibits this type of conduct.

Additionally, it is entirely possible that a loud, angry group of protestors in front of Dr. Crabb's house denouncing President Clinton while carrying signs describing in graphic detail the sexual misdeeds of the President may be in violation of the ordinance. If the circumstances are such that a reasonable person could conclude that these picketers are engaged in focused picketing, then the ordinance will prohibit their activities. In any event, even if their picketing is more general in nature and not focused on a specific person, just because the ordinance does not prohibit *all* conduct that might disrupt residential privacy and tranquility does not mean that the ordinance is not narrowly tailored. It is permissible for a city to eliminate one "evil" at a time, in this case the "evil" which may be caused by focused residential picketing. I conclude that the Lincoln ordinance is narrowly tailored and is not substantially broader than necessary to achieve the city's interest.[3]

#### (4) Alternative Channels of Communication

The plaintiffs do not argue that the Lincoln ordinance fails to leave open ample alternatives for communication. Nonetheless, it is worthy to note that in *Douglas v. Brownell*, 88 F.3d 1511 (8th Cir.1996), the Eighth Circuit Court of Appeals found that an ordinance prohibiting picketing "in front of or within one house on either side

---

**3.** The plaintiffs have put forth additional arguments in the form of hypothetical scenarios to support their argument that the ordinance prohibits substantially more speech than nec-

essary to protect the city's interest. I shall address these arguments in Section C of this memorandum and order relating to the plaintiffs' overbreadth arguments.

of a residence or dwelling" was narrowly-tailored and left open ample alternatives for communication. *Douglas*, 88 F.3d at 1520. In making its determination, the *Douglas* court found that "[t]he extension into the adjacent 75 foot lots is only slightly more than the 36 foot buffer zone approved in *Madsen [v. Women's Health Ctr., Inc.*, 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994) ]." *Id.* The *Douglas* court stated:

> The only protected activity the ordinance prohibits is picketing directly in front of the targeted resident's home and directly in front of the house on each side of the targeted residence. "Picketing" does not require that the protesters carry a sign, *Frisby*, 487 U.S. at 483, 108 S.Ct. at 2501–02, and "picketing" can include a wide variety of activities, including prayer, *see id.* at 486, 108 S.Ct. at 2503 (defining the conduct falling within the picketing ordinance as conduct not for the purpose of disseminating a message to the general public, but for the purpose of intruding on the targeted resident). The protesters can picket, march, preach, or pray anywhere in the residential area except in the three-structure zone. Indeed, the protesters can picket, march, preach, or pray directly across the street from the targeted house and the house on each side of the targeted house. The ordinance preserves ample alternative channels of communication.

*Douglas*, 88 F.3d at 1521.

It would be unreasonable for me to find that Lincoln's 50–foot buffer zone fails to leave open sufficient alternative channels of communication in light of the Eighth Circuit's finding in *Douglas* that the "adjacent lot" buffer zone, which amounted to a 75–foot buffer zone, left open sufficient alternative channels of communication. Therefore, based on the Eighth Circuit's finding in *Douglas*, I conclude that the Lincoln ordinance leaves open ample alternatives for communication. Having found that the Lincoln ordinance is content-neutral, serves a significant governmental interest, is narrowly tailored to serve that interest, and leaves open ample alternative channels of communication, I conclude that the Lincoln ordinance withstands the plaintiffs' challenge that it violates their First Amendment rights to free speech.

### B. Vagueness

■ The plaintiffs argue that the Lincoln ordinance is unconstitutionally vague in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution. In *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), the Supreme Court found that the "void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender*, 461 U.S. at 357, 103 S.Ct. 1855. The Eighth Circuit has stated that "[t]o survive a vagueness challenge, a statute must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and 'provide explicit standards for those who apply the [ordinance].'" *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 689 (8th Cir.1992) (citations omitted). "Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 357–58, 103 S.Ct. 1855 (internal quotations and citation omitted). "Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.* (internal quotations and citation omitted).

### (1) Fair Notice of Prohibited Conduct

The plaintiffs argue that the Lincoln ordinance is vague because it fails to

provide citizens fair notice of prohibited conduct. For example, the ordinance proscribes "picketing directed toward a specific person or persons including, but not limited to, marching, congregating, standing, parading, demonstrating, parking or patrolling by one of more persons, with or without signs." The plaintiffs query how one will know whether a protest on a certain issue will be perceived as directed toward a given individual if the message does not specifically identify the person by name or photograph. In other words, the plaintiffs argue that a person of reasonable intelligence would have difficulty in determining from the language of the ordinance exactly what, short of naming someone on a sign or in a message, would constitute directing a message toward a person.

It is true that the ordinance does not describe every scenario in which a person might be charged with violating the ordinance. However, the ordinance is sufficiently clear to alert a reasonable person as to what conduct may amount to a violation. The ordinance clearly defines the limited physical boundaries to which it applies. The ordinance applies to that rectangular zone encompassing the public right-of-way abutting the targeted dwelling and the property fifty feet on either side of it and extending across the street,

but not including the sidewalk space on the other side of the street. Given those physical parameters, the ordinance puts the reasonable person on notice that any "focused picketing" of a targeted dwelling which occurs within that defined area could result in a violation of the ordinance. The ordinance defines "focused picketing" and lists a number of activities which might be considered a violation of the ordinance, such as marching, congregating, standing, parading, demonstrating, parking or patrolling for the purpose of picketing a targeted dwelling. A reasonable person can conclude that if he or she engages in any of these activities within the limited zone set forth in the ordinance *with* the purpose of picketing a targeted dwelling, such conduct *is* prohibited by the ordinance. Likewise, a reasonable person can conclude that if he or she marches, congregates, stands, parades, demonstrates, parks or patrols in a residential area *without* the purpose of picketing a targeted dwelling, such conduct *is not* prohibited under the ordinance. Based on a plain reading of the ordinance, a reasonable person could ascertain whether his or her conduct or proposed conduct will violate the focused residential picketing ordinance.[4]

### (2) Adequate Guidelines for Law Enforcement Officials

The plaintiffs also argue that the ordinance is vague because it leaves law

---

4. Of course, there will always be people who choose to test the boundaries of certain statutes, laws or ordinances. Unfortunately, it is rare when a statute, law or ordinance can describe every situation that will constitute a violation, especially when intent is an element of the crime. With respect to the Lincoln ordinance, one can imagine that there will be picketers who wish to picket on issues of abortion as close to Dr. Crabb's residence as legally possible. Or, they may wish to test under what circumstances they may actually penetrate the zone of privacy outlined in the ordinance without their activities being construed as a violation of the ordinance. Undoubtedly, the boundaries of this ordinance will be tested. Indeed, some people may choose to participate in a general protest or march in opposition of abortion, and the path

of the march may take place on residential sidewalks, including the sidewalk in front of and abutting Dr. Crabb's residence. As long as the conduct of the protestors or marchers suggests that they are engaged in a general march or protest, their activities will not violate the ordinance. However, if their conduct suggests that the purpose of their march is to focus on Dr. Crabb and their path encroaches on the area of privacy outlined in the ordinance, then they risk being cited for violating the ordinance. The fact that the intent of some picketers or marchers may be ambiguous does not mean that the ordinance is unconstitutionally vague. It simply means that it may be left to a factfinder to determine whether those persons intended to engage in focused picketing and whether their conduct amounted to a violation of the ordinance.

enforcement officials with unfettered discretion to determine whether or not a violation has occurred. *See Foti v. City of Menlo Park,* 146 F.3d 629, 639 (9th Cir. 1998) (where police officer attempting to enforce a picketing ban must consider a myriad of factors, a real danger of discriminatory enforcement exists). A restriction on free speech must be drafted so as to provide sufficient guidelines for law enforcement and prosecutors to determine whether certain conduct is proscribed. *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). In support of their argument, the plaintiffs cite to the depositions of city police officers. The plaintiffs claim that even the city's police officers do not agree as to the scope of conduct which the ordinance reaches, and therefore the ordinance is unconstitutionally vague.

After considering the police officers' answers to the numerous hypothetical scenarios posed to them at their depositions, it does not appear that there are significant differences among those officers as to when the ordinance has been violated. Of course, hypothetical scenarios often pose interesting and difficult questions as to what kind of conduct is sufficient to evidence a person's intent. However, despite the numerous hypotheticals posed to the officers, the substance of their answers was consistent. That is, the ordinance is violated when there is sufficient evidence that a person is engaged in focused picketing in front of a targeted dwelling.

In *Foti v. City of Menlo Park,* the Ninth Circuit found that a particular provision of a city picketing ordinance was unconstitutionally vague because it was " 'so imprecise that discriminatory enforcement [was a] real possibility.' " *Foti,* 146 F.3d at 639 (citation omitted). The *Foti* court stated:

A Menlo Park police officer attempting to enforce this ban must evaluate a myriad of factors: the driver's choice of a prominent or obscure parking space; the amount of vehicular and pedestrian traffic around the chosen parking space; the presence of any other vehicles, trees, shrubs, or buildings that block the views of passersby; the size, color, design, and shape of the signs; and the placement of the signs on the car. With this range of factors to consider, there is the danger that a police officer might resort to enforcing the ordinance only against cars with signs whose messages the officer or the public dislikes.

*Id.*

In the case at hand, law enforcement officials are not required to consider such a myriad of factors. The elements of the crime are clear. A person engaged in focused picketing of a targeted dwelling in the limited zone specified in the ordinance is in violation of the ordinance. The only factor left open to the discretion of the officers is the determination of whether a picketer's protests are focused or not. While some officers may disagree as to how much evidence of the picketer's intent is necessary before action should be taken against a particular picketer, it is often necessary for law enforcement officials to use their discretion in determining whether a particular individual's conduct has reached the point that an actual violation has occurred. The elements of the crime of focused residential picketing are set out clearly in the ordinance, and the ordinance provides sufficient guidelines for law enforcement and prosecutors to determine objectively whether a violation has occurred. The ordinance does not leave open the danger that a police officer might resort to enforcing the ordinance only against picketers whose message the officer dislikes. For these reasons, I conclude that the ordinance is not unconstitutionally vague.

### C. Overbreadth

The plaintiffs argue that the Lincoln ordinance is unconstitutionally overbroad in violation of the First and Fourteenth Amendments to the United States Constitution. Although I have already determined that the Lincoln ordinance is narrowly tailored as applied to the plain-

tiffs' proposed conduct, a challenge that the ordinance is overbroad presents additional questions. "The overbreadth doctrine allows: 'an individual whose own speech or expressive conduct may validly be prohibited or sanctioned ... to challenge a statute on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.'" *Jacobsen v. Howard,* 109 F.3d 1268, 1274 (8th Cir.1997) (citation omitted). The plaintiffs argue that the Lincoln ordinance is overbroad because it unconstitutionally restricts the speech of those who might desire to engage in legally protected speech. In support of their argument, the plaintiffs put forth several hypothetical scenarios which are prohibited by the ordinance.

One argument put forth by the plaintiffs is that the ordinance burdens more speech than necessary because it would prohibit even the welcomed picketer. For example, the ordinance would ban a fifth-grader who may wish to stand in front of his friend's house with a sign stating "GET WELL CHARLIE—OUR TEAM NEEDS YOU." This was the same example used by Justice Stevens in his dissent in *Frisby.* In Justice Stevens' dissent, he concluded that the focused-picketing ordinance in question was overbroad because it applied to communications which may be welcomed by the targeted person as well as those which may be unwelcome. *See Frisby,* 487 U.S. at 497, 108 S.Ct. 2495 (Stevens, J., dissenting). Similarly, the Lincoln ordinance applies to welcomed and unwelcomed picketers alike. However, even though Justice Stevens thought that the ordinance was overbroad, he acknowledged that even when a statute or ordinance may prohibit some communication which is protected under the First Amendment, the question still remains as to whether the "strong medicine" of the overbreadth doctrine should apply. *Id.*

The Supreme Court has stated, and the Eighth Circuit has recognized, that "the overbreadth doctrine is 'strong medicine,' ... used only if the overbreadth is 'substantial.'" *Jacobsen,* 109 F.3d at 1274 (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916–17, 37 L.Ed.2d 830 (1973) and *City of Houston v. Hill,* 482 U.S. 451, 458–59, 107 S.Ct. 2502, 2507–08, 96 L.Ed.2d 398 (1987)). The Supreme Court discussed what constitutes "substantial overbreadth" in *Members of City Council of the City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). In that case, the Court stated:

> The concept of "substantial overbreadth" is not readily reduced to an exact definition. It is clear, however, that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge. [footnote omitted] On the contrary, the requirement of substantial overbreadth stems from the underlying justification for the overbreadth exception itself—the interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the Court.

*Id.* at 800, 104 S.Ct. 2118. The Court concluded that "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* at 801, 104 S.Ct. 2118 (citations omitted).

The fact that the Lincoln ordinance may prohibit some welcomed picketers does not warrant the application of the strong medicine of the overbreadth doctrine. First of all, it is important to distinguish between a welcomed picketer and a well-intentioned picketer, because it is entirely possible that even a well-intentioned picketer could become a nuisance to the targeted person and begin to disturb the targeted person's residential privacy and tranquility. After all, just because a picketer has good inten-

tions does not mean that the targeted person will not be disturbed by the presence of that person on the street directly in front of his home. Thus, the well-intentioned picketer could very well represent the type of "evil" the city sought to protect against when it enacted the ordinance.

A welcomed picketer, on the other hand, is one whom a targeted person wants in front of his or her residence. I shall assume for purposes of this argument that welcomed focused residential picketers actually exist and that they have refrained from their picketing out of fear that they might be cited for violating the Lincoln ordinance. However, although such picketers might not represent the "evil" that the city sought to prevent in enacting the ordinance, it is extremely doubtful that the ordinance significantly compromises their First Amendment protections. For example, if law enforcement officials ever became aware of such welcomed focused residential picketers and there arose a danger that they might be in violation of the Lincoln ordinance, the targeted person could simply welcome the picketers onto his private property out of the reach of the ordinance. Also, the likelihood that such picketers would actually be brought to the attention of law enforcement officials and cited for violating the Lincoln ordinance is extremely remote. In short, I am not convinced by this example that the strong medicine of the overbreadth doctrine should be applied to the Lincoln ordinance.

A second scenario put forth by the plaintiffs is that the Lincoln ordinance prohibits picketers from picketing in front of the governor's mansion on any issue ranging from tax reform to the death penalty. According to the plaintiffs, the ordinance goes too far by eliminating this type of constitutionally protected political speech. While I find this argument interesting, I am not convinced that it renders the ordinance overbroad. I first point out that the plaintiffs have not shown why the residents of the governor's mansion are entitled to less residential privacy and

tranquility than other city residents, or how this ordinance violates picketers' constitutional rights by making them picket on the sidewalk across the street from the governor's mansion instead of the sidewalk immediately in front of the governor's mansion. Nonetheless, assuming that the Lincoln ordinance could not be applied constitutionally to picketers in front of the governor's mansion, that alone does not render the ordinance constitutionally overbroad on its face. The Supreme Court has recognized that "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Taxpayers for Vincent*, 466 U.S. at 800, 104 S.Ct. 2118. In this case, despite the fact that there may be constitutional concerns with respect to applying the ordinance to .picketers in front of the governor's mansion, I do not find that the ordinance is substantially overbroad.

Finally, the plaintiffs have cited, and it is important that I address, the hypothetical scenarios put forth by the Eighth Circuit in *Kirkeby*. In *Kirkeby* the court of appeals stated that the Fargo ordinance at issue was not narrowly tailored, because it "arguably reaches a teenager pleading with her father to extend her curfew, a child protesting when ordered to eat all of his vegetables, or a husband trying to convince his wife that he really needs a new set of golf clubs." *Kirkeby*, 92 F.3d at 659. The court stated that "[w]hile limiting such activities might well improve domestic tranquility, Fargo is certainly without power to do so." *Id.* At first glance, it appears that the Lincoln ordinance also bans such hypothetical conduct. However, a closer look at the *Kirkeby* court's decision shows that there is a significant difference in that case and the case at hand.

Before listing these hypothetical activities which would apparently be banned under the Fargo ordinance, the *Kirkeby* court specifically noted the broad language of the Fargo ordinance. The Fargo ordinance prohibited picketing "inside of, in

front, or about any premises for the purpose of persuading the public or an occupant of such premises or to protest some action, attitude or belief." *Id.* at 659. Thus, according to the plain language of the ordinance, the hypotheticals proposed by the *Kirkeby* court would be prohibited even if they took place in the driveway, front yard, or even the living room of the targeted dwelling. The Lincoln ordinance does not go so far. In the event anyone wishes to engage in the hypothetical activities suggested by the *Kirkeby* court, it can be done anywhere on the private property of the targeted residence and not be in violation of Lincoln's Focused Residential Picketing Ordinance. The plaintiffs' citation to these hypotheticals is not persuasive in light of the differences between the broadly worded Fargo ordinance and the more narrowly tailored Lincoln ordinance.

The plaintiffs have not made a persuasive argument that the Lincoln ordinance is substantially overbroad or that there is "a realistic danger" that the Lincoln ordinance "will significantly compromise recognized First Amendment protections of parties not before the Court." *Taxpayers for Vincent,* 466 U.S. at 801, 104 S.Ct. 2118. It is important to remember that "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Id.* at 800, 104 S.Ct. 2118. After careful consideration, I find that invoking the strong medicine of the overbreadth doctrine is not warranted in this case.

### D. *Equal Protection*

The plaintiffs claim that the Lincoln ordinance violates the Equal Protection Clause of the Fourteenth Amendment. The plaintiffs' argument is based on their impression that the ordinance irrationally discriminates between picketers depending upon the content of the issue addressed in the picket. For example, the plaintiffs claim that a pro-life protestor may not picket against abortion in front of Dr. Crabb's house because of the pro-life mes-

sage, however a picketer who opposes the bombing of Iraq could. In support of their argument, the plaintiffs cite a Supreme Court case which states that " '[s]elective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone.' " *Carey v. Brown,* 447 U.S. 455, 463, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) (citation omitted).

The plaintiffs' argument is not persuasive, because the Lincoln ordinance does not discriminate based on the content of the picketers' message. The ordinance is silent concerning any particular message or content to which it applies. As stated previously in this memorandum, just because a picketer chooses to broadcast the fact that he or she is engaged in focused picketing within the content of the picketer's message does not mean that the ordinance discriminates based on the content of the message. A picketer in front of Dr. Crabb's house who protests against the bombing of Iraq may also be in violation of the Lincoln ordinance if the picketer's conduct shows that he or she is engaged in focused picketing. The Lincoln ordinance does not discriminate against protestors on the basis of the content of their message, and it does not violate the plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment.

### E. *Conclusion*

There do not appear to be any genuine issues of material fact in this case. The plaintiffs and the defendants have fully briefed the disputed legal issues, and after careful consideration I find that summary judgment is appropriate for the defendants. The Lincoln ordinance is not unconstitutional as applied to the plaintiffs, and it is not unconstitutional on its face. Although the plaintiffs have requested oral argument on the motion for summary judgment, it does not appear that oral argument is necessary.

**IT IS ORDERED** that the plaintiffs' Motion for Summary Judgment, filing 17,

is denied; the plaintiffs' Motion for Oral Argument, filing 21, is denied; and the defendants' Motion for Judgment on the Pleadings, filing 8, converted to a Motion for Summary Judgment pursuant to Rule 12(c), is granted.